## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

PATRICK DUNN,          )
                            )
       **Plaintiff,**     )
                            )
**v.**                     )      **CIVIL ACTION NO.**
                            )
                            )
**WOB DESTIN, LLC,**    )      _____
                            )
      **Defendant.**    )
                            )
                            )

## COMPLAINT

## I.   INTRODUCTION

Plaintiff, Patrick Dunn, files this Title III, Americans with Disabilities Act (hereinafter "ADA") action, pursuant to 42 U.S.C. §12181, *et seq*. In Count One of the Complaint, Plaintiff seeks to enjoin the Defendant to remove architectural barriers. In Count Two of the Complaint, Plaintiff seeks to enjoin Defendant to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three of the Complaint, Plaintiff seeks to enjoin the Defendant's use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and

Three of the Complaint seek independent relief in addition to the removal of architectural barriers. Count Four of the Complaint seeks to enjoin Defendant's failure to design and construct the facility to ADA compliance.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. Because this is an action for declaratory and injunctive relief pursuant to Title III of the ADA, 42 U.S.C. §12181, *et seq*., and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, the United States District Court for the Northern District of Florida, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Northern District of Florida.

3. Plaintiff, Patrick Dunn, was involved in an automobile accident that caused permanent damage to his C-7 vertebra in his spinal cord. As a result, he became paralyzed, which has permanently confined him to a wheelchair. The extent of Mr. Dunn's physical problems limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102

(2) (A). Mr. Dunn is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also, 28 C.F.R. § 36.104.

4.   Defendant, WOB Destin, LLC, (hereinafter "World of Beer"), is a limited liability company that is both registered to conduct business and is conducting business within the State of Florida sufficient to create both general and specific *in personam* jurisdiction. Upon information and belief, WOB Destin, LLC, operates and leases the World of Beer restaurant located at 4287 Legendary Drive, Destin, FL 32541. 42 U.S.C. § 12182.

5.   Substantially all events and omissions, and the real property, occurred in the Northern District of Florida and the Defendant is a citizen thereof. 42 USC 1391 (b)(2).

6.   Plaintiff, Patrick Dunn travels to Destin at least once a year for a week and often more than that. He lives in Andalusia, Alabama, approximately 85 miles from Destin, which is a vacation and entertainment destination. Mr. Dunn enjoys the social activities and entertainment whether it is going to the beach or going to enjoy live music at the bar with friends

and family. Plaintiff has recently visited the restaurant and enjoys the beer and cuisine that World of Beer offers. He intends to continue going to the restaurant because he enjoys the 50 craft beers on tap, over 500 in the cooler and a menu of tasty tavern fare that's crafted to go perfectly with beer World of Beer offers. Plaintiff will return not only to dine at the restaurant, but also to confirm compliance with the ADA by the Defendant. Plaintiff cannot provide a specific time and date upon which he will return to the restaurant because he has not and should not be expected to engage in such definite future planning. Such specific planning is not necessary to invoke the ADA.  See, e.g. *Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc*. No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Nevertheless, Plaintiff definitely intends to return to the World of Beer restaurant.

**7.**   Because of the barriers described below in paragraph 20 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendant's premises on the basis of his disabilities.

8.    Plaintiff, accordingly, has Article III standing to pursue this case because (1) he is disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's restaurant is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) he has suffered a concrete and particularized injury by being denied access to the restaurant by architectural barriers, by being denied access by the Defendant's practices described throughout this Complaint, by Defendant's denial of the use of its establishment for his full and equal enjoyment as the able-bodied, as described throughout the Complaint, by being denied access by Defendant's failure to design and construct its facility to ADA compliance, and (4) because of these injuries there exists a genuine threat of imminent future injury, as described in paragraph 18.

## II.    PLAINTIFF'S CLAIMS

**ADA, Title III**

9.    On or about July 26, 1990, Congress enacted Title III of the ADA, 42 U.S.C. §12181 *et seq*. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. 42 U.S.C.

§12181; 20 C.F.R. §36.508(A); *see also*, § 36.304.

10. Pursuant to 42 U.S.C. § 12181(7); 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that its a restaurant providing 50 craft beers on tap, over 500 in the cooler and a menu of tasty tavern fare that's crafted to go perfectly with beer experience to the public. Accordingly, it is covered by the ADA and must comply with the Act.

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(iv)**
***(Architectural Barriers)***

**<u>Defendant's Facility Is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in this Complaint</u>**

11. Plaintiff is informed and believes based on publicly available information that the establishment in which the World of Beer restaurant located at 4287 Legendary Drive, Destin, FL 32541 is located was first constructed in 2014.

12. Upon further information and belief based on publicly available information, alterations and/or improvements were made to the World of Beer restaurant located at 4287 Legendary Drive, Destin, FL 32541 after 2014.

13. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an existing facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All alterations made to existing facilities after January 26, 1992, and all new construction after January 26, 1993, must be readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. 42 U.S.C. § 12183(a); (b). 28 C.F.R. § 36.402. "Readily accessible to and usable by. . ." is the new construction standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the new construction standards is if the design and construction of the building to be readily accessible and usable is structurally impracticable. 42 U.S.C. § 12183(a)(1). The structural impracticability defense applies only in rare circumstances of extraordinary terrain. 28 C.F.R. § 36.401(c). "Readily accessible to and usable by. . ." is also the alterations standard. 42 U.S.C. § 12183(a)(2). Alterations must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 C.F.R. § 36.402. An alteration is a change to a place of

public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 C.F.R. § 36.402(b).

14.   New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 C.F.R. § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 C.F.R. § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15,

2012. 28 C.F.R. § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable. *See* 28 C.F.R. § 36.406(5)(ii), which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

15.   For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

## Plaintiff's Concrete and Particularized Standing to Pursue an Injunction

16.   The Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities,

privileges, advantages and/or accommodations at World of Beer in derogation of 42 U.S.C. § 12101 *et seq*., and as prohibited by 42 U.S.C. § 12182 *et seq*. As new construction, the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a); (b). Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

17.  As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations, and services offered to individuals without disabilities within and about the Defendant's facility. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the establishment in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

18.  Plaintiff has definite plans to return to World of Beer's establishment in the future, as described in paragraph 6. Plaintiff will return to the World of Beer restaurant within the next few months not only to eat, but also to see if World of Beer has repaired the barriers and changed its practices

and procedures. Even when the World of Beer establishment is repaired, Plaintiff will continue to go to the establishment to dine. Also, and of vital importance, the barriers are not just created by construction issues; instead, many of them are created by human activity, from the way the Defendant's workers at the establishment use the physical architectural elements of the establishment. The barriers created by human activity will need to be reviewed and maintained forever, to be sure Defendant's management and workers continuously act in a manner that do not create barriers. Absent remedial action by Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of his disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied "there is a 100% likelihood that plaintiff . . . will suffer the alleged injury again when he returns to the restaurant." Due to the definiteness of Plaintiff's future plans to continue visiting the subject establishment, there exists a genuine threat of imminent future injury.

**Architectural Barriers**

19. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

20. Plaintiff has been throughout the establishment, from the entrance to the hostess service counter, to and throughout the dining areas; from the dining areas to the restrooms, to and throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Defendant's facility located at 4287 Legendary Drive, Destin, FL 32541, more commonly known as "World of Beer", violates the ADA in particular but not limited to:

   A. Defendant provides outdoor seating benches for able-bodied individuals to sit and relax while waiting, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other

individuals without disabilities, which includes but is not limited to the following failures of Defendant:

(1) Defendant fails to maintain a seating bench in conformance with the ADA Standards for Accessible Design so that a clear floor or ground space is provided and positioned at the end of the seat and parallel to the short axis of the seat;

(2) Defendant fails to maintain a seating bench in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a seat that is a minimum of 42 inches long and 20 inches deep minimum to 24 inches deep maximum;

(3) Defendant fails to maintain a seating bench in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to the seat being affixed to the wall, or maintaining a back support that is 42 inches long minimum, extending 2 inches maximum above the seat surface to a point 18 inches above

the seat surface so that the back support measures a maximum of a 2.5 inches from the rear edge of the seat measured horizontally;

**(4)** Defendant fails to maintain a seating bench in conformance with the ADA Standards for Accessible Design so that the top of the seat surface is 17 inches minimum and 19 inches maximum above the finish floor or ground;

**(5)** Defendant fails to maintain a seating bench in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the structural strength of the seat so that when a vertical or horizontal force of 250 pounds is applied at any point on the seat, fastener, mounting device, or supporting structure, the seat is not rendered unusable by the disabled;

**B.** Defendant provides several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the outdoor seating area which includes high-top dining surfaces for able-bodied individuals, but fails to maintain that same level of

service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendant:

**(1)** There is not at least 5% of the seating spaces and standing spaces at the outdoor dining surfaces that are maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to the accessible route to the dining surfaces which has the discriminatory effects of rendering the outdoor seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of the seating spaces and standing spaces at the outdoor dining surfaces that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

(3) There is not at least 5% of the seating spaces and standing spaces at the outdoor dining surfaces that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

(4) There is not at least 5% of the seating spaces and standing spaces at the outdoor dining surfaces that are maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

C. Defendant provides interactive games for able-bodied individuals to play games but fails to provide that same level of goods and services to non-able-bodied individuals but denied individuals which disabilities the full and equal opportunity to participate in or benefit

from, the goods, services, facilities, privileges, advantages, or accommodations that is the same experience afforded to able bodied individuals;

D. The interactive games do not provide the required clear floor or ground space for an individual with a disability to approach the gaming devices which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

E. Defendant provides lounge seating chairs for able-bodied individuals to sit and relax while dining at the outdoor seating area, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

(1) Defendant fails to maintain a lounge seat in conformance with the ADA Standards for Accessible Design so that a clear

floor or ground space is provided and positioned at the end of the seat and parallel to the short axis of the seat;

**(2)** Defendant fails to maintain a lounge seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a seat that is a minimum of 42 inches long and 20 inches deep minimum to 24 inches deep maximum;

**(3)** Defendant fails to maintain a lounge seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to the seat being affixed to the wall, or maintaining a back support that is 42 inches long minimum, extending 2 inches maximum above the seat surface to a point 18 inches above the seat surface so that the back support measures a maximum of a 2.5 inches from the rear edge of the seat measured horizontally;

**(4)** Defendant fails to maintain a lounge seat in conformance with the ADA Standards for Accessible Design so that the top of the seat surface is 17 inches minimum and 19 inches maximum above the finish floor or ground;

**(5)** Defendant fails to maintain a lounge seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the structural strength of the seat so that when a vertical or horizontal force of 250 pounds is applied at any point on the seat, fastener, mounting device, or supporting structure, the seat is not rendered unusable by the disabled;

**F.** The floor mats throughout the establishment fail to be maintained in conformance with the ADA Standards for Accessible Design so that the mats are stable, firm, or otherwise secured to the floor

**G.** Defendant provides a hostess service counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the

experience afforded to individuals without disabilities, including but not limited to the following elements:

(1)   The hostess service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

     **a.**   There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

     **b.**   There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

(2)   The existing hostess service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

a. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

b. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

c. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

(3) There is no ADA accessible portion of the hostess service counter that extends the same depth as the non-accessible portion of the service counter;

(4) Defendant locates items on top of the counter and consequently obstructs the required clear counter surface which has a discriminatory effect in practice of prohibiting

disabled individuals from the full and equal opportunity to use the counter;

**(5)** Defendant fails to maintain the accessible features at the hostess service counter that are required to be readily accessible to and usable by individuals with disabilities;

**H.** Defendant provides lounge seating chairs for able-bodied individuals to sit and relax while dining, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**(1)** Defendant fails to maintain a lounge seat in conformance with the ADA Standards for Accessible Design so that a clear floor or ground space is provided and positioned at the end of the seat and parallel to the short axis of the seat;

**(2)** Defendant fails to maintain a lounge seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable

by disabled individuals which includes but is not limited to maintaining a seat that is a minimum of 42 inches long and 20 inches deep minimum to 24 inches deep maximum;

**(3)** Defendant fails to maintain a lounge seat in conformance with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to the seat being affixed to the wall, or maintaining a back support that is 42 inches long minimum, extending 2 inches maximum above the seat surface to a point 18 inches above the seat surface so that the back support measures a maximum of a 2.5 inches from the rear edge of the seat measured horizontally;

**(4)** Defendant fails to maintain a lounge seat in conformance with the ADA Standards for Accessible Design so that the top of the seat surface is 17 inches minimum and 19 inches maximum above the finish floor or ground;

**(5)** Defendant fails to maintain a lounge seat in conformance with the ADA Standards for Accessible Design in all the

ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the structural strength of the seat so that when a vertical or horizontal force of 250 pounds is applied at any point on the seat, fastener, mounting device, or supporting structure, the seat is not rendered unusable by the disabled;

I. Defendant provides several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the bar for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendant:

(1) There is not at least 5% of the seating spaces and standing spaces at the bar that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to the accessible

route to the dining surfaces which has the discriminatory effects of rendering the bar area seating spaces and its associated elements as unusable by disabled individuals;

(2) There is not at least 5% of the seating spaces and standing spaces at the bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

(3) There is not at least 5% of the seating spaces and standing spaces at the bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

(4) There is not at least 5% of the seating spaces and standing spaces at the bar area hat are maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches

minimum and 34 inches maximum above the finished which
includes the required 30 inches of clear dining surface so that
the surface does not prohibit disabled individuals from being
equally afforded the opportunity to sit and enjoy the goods
and services at the establishment;

J. Defendant provides several types of dining surfaces disbursed
throughout the establishment for the consumption of food or drink
at the indoor seating area which includes hybrid booth dining
surfaces and high-top dining surfaces for able-bodied individuals,
but fails to maintain that same level of service to individuals with
disabilities, which segregates and relegates individuals with
disabilities to inferior benefits of the goods and services provided at
Defendant's place of public accommodation which includes but is
not limited to the following failures of Defendant:

(1) There is not at least 5% of each type of seating spaces and
standing spaces disbursed throughout the indoor dining area
that is maintained in conformance with the ADA Standards
for Accessible Design in all the ways that are required to be
readily accessible to and usable by disabled individuals

which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)**  There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area

that is maintained   in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

K.  Defendant provides a restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

(1)  Defendant maintains signage designating and directing able-bodied individuals to the restrooms, but fails to maintain signage conforms to the ADA Standards for Accessible Design so that the international symbol of

accessibility is designating and directing disabled individuals to the accessible restroom;

**(2)** The restroom fails to be maintained in operable condition by conforming with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the toilet compartment, water closet and its associated elements as unusable by disabled individuals;

**(3)** The restrooms toilet compartment door fails to be maintained in conformance with the ADA Standards for Accessible Design so that the door is self-closing;

**(4)** The restrooms toilet compartment door operating hardware fails to be maintained in conformance with the ADA Standards for Accessible Design so that the door pulls are provided on both sides and the hardware does not require tight grasping, twisting, and/or pinching of the wrist;

**(5)**   The restrooms toilet compartment fails to be maintained in conformance with the ADA Standards for Accessible Design so that the toilet compartment measures 60 inches wide from the side wall minimum and 59 inches deep from the rear wall minimum;

**(6)**   The clear floor space around the water closet fails to be maintained in conformance with the ADA Standards for Accessible Design so that the trashcan and/or other associated obstructions are not restricting the water closets usability by disabled individuals.

**(7)**   The water closet fails to be maintained in conformance with the ADA Standards for Accessible Design in all ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a toilet compartment with a water closet measured 16-18 inches from the side wall and 17-19 inches above the finished floor measured to the top of the seat, with the flush control valve located on the open side of the water closet;

**(8)** Defendant maintains items in the maneuvering clearance at the water closet which has the discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to maneuver to and transfer onto the water closet;

**(9)** The side wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a maximum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(10)** The rear wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12

inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

(11) The toilet paper dispenser fails to be properly maintained in conformance with the ADA Standards for Accessible Design so that the dispenser is located 7-9 inches from the front of the water closet and does not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

(12) The coat hook fails to be maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the coat hook measures the required height for unobstructed and/or obstructed reach ranges;

(13) The soap dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts measure the required height for unobstructed and/or obstructed reach ranges and do not require the use of tight grasping, twisting, and/or pinching of the wrist;

**(14)** Defendant fails to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

**L.** Defendant provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches

above the finished floor and positioned for a forward approach;

(3) The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

(4) There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

(5) The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts measure the required height for unobstructed and/or obstructed reach ranges and do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

(6) The soap dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts measure

the required height for unobstructed and/or obstructed reach
ranges and do not require the use of tight grasping, twisting,
and/or pinching of the wrist;

**(7)** Defendant fails to maintain the accessible features of the
lavatory that are required to be readily accessible to and
usable by individuals with disabilities;

21.  To date, the barriers to access and other violations of the ADA still exist
and have not been remedied or altered in such a way as to effectuate
compliance with the provisions of the ADA.

22.  Plaintiff has been obligated to retain the undersigned counsel for the
filing and prosecution of this action. He is entitled to have his reasonable
attorney's fees, costs, and expenses paid by the Defendant pursuant to 42
U.S.C. §12205.

23.  Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to
grant Plaintiff's injunctive relief, including an order to alter the
discriminating facility to make it readily accessible to, and usable by,
individuals with disabilities to the extent required by the ADA, and
closing the facilities until the requisite modifications are completed, and

to further order the Defendant to modify its policies, practices, and procedures, to provide equal use of its facilities, services, and benefits to disabled individuals.

**COUNT TWO**
**VIOLATION OF AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(ii)**
***(Practices, procedures, and policies denying equal benefits)***

## ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

24. Plaintiff re-alleges paragraphs 1 – 23 above.

25. The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1).

26. The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an unequal benefit and to relegate individuals with disabilities to a different or separate benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii), (iii); 28 C.F.R. § 36.202(b), (c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a).

Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided segregated accommodations compared to non-disabled individuals; thus, relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

27.  Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

28.  To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

29. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation").

30. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002) that:

> *A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges.*

## Defendant's Failed Practices and Lack of Policies are Discriminatory

31. Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> *[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*

32. Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

33. As detailed below, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford their goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or

otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiff. Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

34. Defendant either has no policies, practices, and procedures to remove architectural barriers or else it does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

35. Defendant's use of its restaurant, and its practices at the restaurant located at 4287 Legendary Drive, Destin, FL 32541, create barriers, and in so doing, denies Plaintiff the full and equal enjoyment of the goods and services at World of Beer. Those practices include:

   a) Defendant makes the outdoor seating benches inaccessible for use by the disabled by failing to provide seating that conforms to the

ADA Standards for Accessible Design, which means Plaintiff is denied the opportunity to fully and equally use the seating to sit and relax while waiting, whereas non-disabled individuals are able to utilize the outdoor seating benches;

b) Defendant's seating arrangements are designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able-bodied individuals, disabled individuals are forced to sit at one type of table and/or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the World of Beer outdoor dining experience;

c) Defendant fails to provide ADA accessible seating tables and high-top seating tables in the outdoor dining area, which means Plaintiff cannot use or dine in the dining area like non-disabled individuals can;

d) Defendant makes the lounge seating chairs at the outdoor seating area inaccessible for use by the disabled by failing to provide seating

that conforms to the ADA Standards for Accessible Design, which means Plaintiff is denied the opportunity to fully and equally use the seating to sit and relax while waiting, whereas non-disabled individuals are able to utilize the lounge seating chairs;

**e)** Defendant makes the interactive games inaccessible for use by the disabled by failing to provide ADA accessible interactive games that conform with the design standards, which means Plaintiff cannot fully and equally play the interactive games in the way the non-disabled do, because the non-disabled can play the interactive games;

**f)** Defendant make the hostess service counter inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiff cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

**g)** Defendant makes the lounge seating chairs inaccessible at the indoor seating area for use by the disabled by failing to provide seating that conforms to the ADA Standards for Accessible Design,

which means Plaintiff is denied the opportunity to fully and equally use the seating to sit and relax while waiting, whereas non-disabled individuals are able to utilize the lounge seating chairs;

**h)** Defendant's seating arrangements are designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able-bodied individuals, disabled individuals are forced to sit at one type of table and/or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the World of Beer dining experience;

**i)** Defendant fails to provide an ADA accessible bar, which means Plaintiff cannot use or dine at the bar like non-disabled individuals can;

**j)** Defendant fails to provide ADA accessible seating tables, hybrid booth seating tables and high-top seating tables in the indoor dining area, which means Plaintiff cannot use or dine in the dining area like non-disabled individuals can;

k) Defendant makes its toilet facilities inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the restroom so that Plaintiff is afforded the opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the restroom;

l) Defendant fails to provide any signage throughout the restaurant displaying the International Symbol of Accessibility identifying areas of the restaurant as ADA accessible;

m) Defendant fails to provide a place for the disabled both to sit and eat like able-bodied people can;

n) Defendant makes its establishment inaccessible for the disabled so that Defendant might as well hang a sign saying disabled people not welcome;

o) Defendant, according to its own publicly available information, lacks any policies, practices, and/or procedures that ensure the "use" of its allegedly compliant facilities comply with the ADA;

p) Defendant's policies, practices, and procedures are conducted

without regard to disabled individuals;

36. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv), (v).

37. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

38. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else it failed to create, implement, and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its restaurant as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of World of Beer, as described above in detail.

39. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

40. To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

41. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendant's restaurant consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of the World of Beer restaurant; (3) World of Beer will modify its practice of making ADA Title III architectural barrier remediation's

only upon demand by the disabled.

42. As pled above, WOB Destin, LLC, "operates" and "leases" the World of Beer restaurant located at 4287 Legendary Drive, Destin, FL 32541, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices, and procedures, as alleged above.

43. The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

44. By this Complaint, Plaintiff provides sufficient notice of his demands for an alteration in Defendant's policies, practices, and procedures.

45. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

46. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

**47.**  Plaintiff re-alleges paragraphs 1 – 46 above.

**48.**  42 U.S.C. § 12182(a) provides:

> *No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*

**49.**  Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**50.**  Congress also found that: "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities, 42

U.S.C. § 12101(a)(5); "the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" 42 U.S.C. § 12101(a)(7). Congress even found that: "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C. § 12101(a)(8).

51.  In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1), (2).

52.  The ADA provides, *inter alia*, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit

from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

53. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

54. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, *et seq*., and the regulations promulgated thereunder.

55. To address this broad range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation").

56. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public

accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

57. The keystone for this analysis is Defendant must start by considering how its facility is used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005); *see also, Baughman v.  Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

58. Plaintiff, Patrick Dunn, was denied full and equal access to the World of Beer restaurant. Plaintiff specifically and definitely wants to return to the Defendant's restaurant for its 50 craft beers on tap, over 500 in the cooler and a menu of tasty tavern fare that's crafted to go perfectly with beer experience. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff as follows: Defendant failed to provide Plaintiff that same experience that non-disabled individuals have when dining at World of Beer; Defendant failed to provide the same

experience by making it nearly impossible for the disabled to access the seating benches, while the non-disabled can independently access the seating; Defendant's failure to provide Plaintiff the same dining experience by World of Beer's ablest use of its outdoor seating area seating arrangements that are designed, positioned and orientated in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able-bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or otherwise outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the World of Beer dining experience; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the lounge seating chairs at the outdoor seating area, while the non-disabled can independently access the seating; Defendant failed to provide the same experience by making it nearly impossible for the disabled to play the interactive games, while the non-disabled can independently play the interactive games; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the hostess service counter,

while the non-disabled can independently access the counter and the services provided at the counter; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the lounge seating chairs at the indoor seating area, while the non-disabled can independently access the seating; Defendant's failure to provide Plaintiff the same dining experience by World of Beer's ablest use of its inside dining area and bar seating arrangements that are designed, positioned and orientated in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able-bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or otherwise outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the World of Beer dining experience; Defendant failed to provide an accessible restroom for disabled individuals, which means that, unlike the able-bodied, the disabled are challenged or denied the opportunity to independently use the restroom, clean up after using the restroom, move throughout the restroom, and prohibited from using all the other elements of the restroom; Defendant's failure to identify by signage what is

accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendant's continued failure to maintain ADA accessibility as an integral part of the highest possible dining experience that non-disabled individuals get to independently enjoy has segregated or otherwise treated Plaintiff and others similarly situated differently, in that, World of Beer makes Plaintiff dependent on family or an independent third party which is not the same dining experience that World of Beer affords to non-disabled individuals and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when at World of Beer.

59. In its Preamble to the Title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and

services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

60. The ADA specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a different or separate benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii), (iii); 28 C.F.R. § 36.202(b), (c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided inferior seating and segregated accommodations compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

61. Thus, Defendant's use of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non-disabled individuals.

"The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a broad mandate to eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

62. Defendant discriminated against Plaintiff by denying Plaintiff full and equal enjoyment and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of World of Beer.

63. Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

64. Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R. § 36.211(a).

65. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

66. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12183(a)(1)**
***(Failure to design and construct facility for ADA compliance)***

67. Plaintiff re-alleges paragraphs 1 – 66 above.

68. 42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except*

> where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.

69. Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination . . . continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." *Id.* § 12101(a)(5). In its Preamble to the Title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

70. To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "to get to, enter and use a facility." H.R. Rep. No. 101-485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," *Id.*, as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is to ensure that the service offered to persons with disabilities is equal to the service offered to others." *Id*.

71. As the legislative history makes clear, the ADA is geared to the future, the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, while requiring all new construction to be accessible. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

72. To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation

implementing Title III of the ADA, 28 C.F.R. Part 36, Appendix.

73. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facilities, from parking areas, interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

74. Defendant, WOB Destin, LLC, as the "operator" of the World of Beer restaurant, is directly involved in the designing and/or construction of its restaurant in this litigation for first occupancy after January 1993.

75. Defendant was and is required to design and construct the World of Beer restaurant to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct its restaurant to be readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendant further violated the statute by failing to design and construct its restaurant in compliance with the ADA during planned alterations as described throughout this Complaint.

76. According to Defendant's own publicly available information, Defendant chose to design its restaurant in a way that is not ADA Title

III compliant whatsoever. Defendant's systematic design of its restaurant fails to afford disabled individuals the same dining experience that is afforded to individuals without disabilities.

77. To date, the Defendant's discriminating actions continue.

78. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

79. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal actions by Defendant.

**WHEREFORE**, premises considered, Plaintiff, Patrick Dunn, demands judgment against the Defendant on Counts One through Four and requests the following injunctive and declaratory relief:

1. That the Court declare that the property leased, and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order enjoining the Defendant to alter its facility

to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and (v) and their implementing regulations, as stated in Count One;

3. That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4. That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the World of Beer experience and to the use of the World of Beer restaurant, and further order Defendant to maintain the required accessible features at the restaurant so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5. That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow it to undertake and complete corrective procedures;

6.    That the Court enjoin Defendant to remediate the World of Beer restaurant to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Four;

7.    That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff;

8.    That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 11th Day of January 2019.


/s/Michael F. Braun
**Michael F. Braun**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.819-4032 f
MFB@ADA-Firm.com
*Attorney for the Plaintiff*